**Paulina BERRIOS LOPEZ,
Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH
AND HUMAN SERVICES,
Defendant–Appellee.**

No. 91–1294.

United States Court of Appeals,
First Circuit.

Submitted July 12, 1991.

Decided Dec. 12, 1991.

Daniel F. Lopez Romo, U.S. Atty., Jose Vazquez Garcia, Asst. U.S. Atty., and Amy S. Knopf, Asst. Regional Counsel, Dept. of Health and Human Services, on brief, for defendant-appellee.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

PER CURIAM.

Claimant Paulina Berrios Lopez filed an application for Social Security disability benefits on November 9, 1988, alleging high blood pressure, a left knee condition, and arthritis. Subsequently, claimant also alleged a mental condition. After a hearing, the Administrative Law Judge (ALJ) conceded that claimant had a severe impairment or impairments that precluded her return to her former work as a short-order cook. The ALJ found, however, that despite claimant's exertional impairments claimant retained the residual functional capacity to perform light work, so long as alternation of positions was possible. The ALJ further found that claimant's mental condition did not significantly restrict her functional capacity except insofar as it precluded her from performing skilled or semi-skilled jobs or jobs requiring understanding detailed or complex instructions. At the hearing the ALJ received testimony from a vocational expert that despite claimant's impairments, there existed a significant number of light jobs in the economy claimant could perform, such as stamper, wire worker, mica classifier, and wire cutter. On the basis of this testimony, the ALJ found claimant not disabled at step 5 of the sequential evaluation process, 20 C.F.R. § 404.1520(f), on the ground that the Secretary had demonstrated the existence of jobs in the economy that claimant could perform. After the Appeals Council denied claimant's request for review of the ALJ's decision, claimant appealed to the district court, which affirmed. Claimant appeals. We affirm.

At the hearing, the ALJ posed the following hypothetical to the vocational expert:

Assume then, that considering the pain element, this claimant has the residual

Raymond Rivera Esteves and Juan A. Hernandez Rivera, on brief, for plaintiff-appellant.

capacity for light duty work—limitedly—that is, she doesn't have the full range of light work in the sense that she can't stand and walk all the time, but she has to exchange positions. Under these circumstances, and taking into consideration that the mental condition is not severely (sic) enough to impose limitations, excepting complex jobs—but that she could perform simple, non-skilled jobs—under these circumstances, what jobs would there be in the national economy that she could perform—exchanging positions, simple tasks?

It was in response to this question that the vocational expert identified light jobs available in the economy that a claimant with these impairments could perform. The ALJ was entitled to credit the vocational expert's testimony as long as there was substantial evidence in the record to support the description of claimant's impairments given in the ALJ's hypothetical to the vocational expert.

■ Despite claimant's arguments that the record lacked substantial evidence to justify a finding of such a relatively mild mental impairment, we have no quarrel with the Secretary on that point. Dr. Reinaldo Kianes, a consulting psychiatrist, examined claimant on August 11, 1989, and found her to have "an adjustment disorder with depressed mood," but with adequate affect, normal flight of ideas, no delusions, phobias, or obsessions, and no perceptual disturbances. He further stated that claimant was coherent, logical, relevant, well-oriented in the three spheres, and with fair memory and judgment. Dr. Kianes concluded that claimant "appears able to handle funds." Based on Dr. Kianes' findings of a relatively limited depressive disorder, the ALJ had substantial evidence for his finding that claimant's mental impairment did not significantly restrict her functional capacity except to preclude complex, skilled, or semi-skilled work. In view of this evidence from an examining psychiatrist, any differences in the boxes checked on the Psychiatric Review Technique form by the ALJ and by Dr. Gonzalez, a non-examining psychiatrist, are of no consequence.

■ Nor do we see any merit to claimant's contention that the Secretary failed to give adequate consideration to claimant's subjective complaints of pain in her left knee and from arthritis. The ALJ fully discussed claimant's subjective complaints of pain as required by *Avery v. Secretary of Health and Human Services,* 797 F.2d 19 (1st Cir.1986). The ALJ noted that "[t]he record shows that there is a left knee condition likely to produce pain, especially if prolonged walking or more than light weight bearing is involved." As the ALJ stated, however, Dr. Melendez, a consulting internist, found that claimant had "mild effusion into left knee" with no edema and good range of motion in all joints, findings inconsistent with intense, disabling pain in the knee. The ALJ further noted that "at the hearing she walked without assistance, and on November 9, 1988 she came to the District Office driving her own car and no difficulties were observed." The ALJ might also have mentioned that claimant stated on her application for benefits that she did "all the household chores at my own pace." Accordingly, the record did contain substantial evidence for the ALJ's conclusions as to the non-exertional impact of claimant's pain, which were as follows:

> In summary, the evidence fails to show clinical findings or observable signs usually associated to severe or disabling pain. Nevertheless, we give some credence to her complaints and to the nature of her left knee impairment with some degree of pain and find that the range of light work she is able to perform is somewhat narrowed.

These conclusions did not entirely disregard claimant's subjective assertions of pain.

■ Somewhat more problematic is the portion of the ALJ's hypothetical in which the ALJ posits a claimant who, with certain stated limitations, retains the exertional capacity to perform light work. There are three medical reports in the record which evaluate claimant's exertional residual functional capacity in relevant detail.

These are the reports submitted by Dr. Arzola and Dr. Sanchez, non-testifying, non-examining physicians who reviewed the medical file, and a report submitted by Dr. Rodriguez–Diaz, a physician who has treated claimant since October 1980.

Dr. Arzola's report, prepared in April 1989, consists of a residual functional capacity assessment form accompanied by brief medical findings. On the form, Dr. Arzola checked boxes indicating that claimant can lift or carry 20 pounds, 10 pounds frequently, can stand, walk or sit six hours, is limited to pushing and/or pulling 20 pounds, and can climb, balance, stoop, kneel, crouch, and crawl occasionally. Dr. Arzola made the following subsidiary medical findings: "Hypertension[,] obesity[,] no angina or CHF, EKG—LVH with strain."

Like Dr. Arzola's report, Dr. Sanchez's report, prepared in September 1989, consists of a residual functional capacity assessment form plus medical findings. Dr. Sanchez checked essentially the same boxes Dr. Arzola did, indicating that claimant can lift and/or carry 20 pounds, 10 pounds frequently, can stand, walk, or sit six hours, and can climb, balance, stoop, kneel, crouch, or crawl occasionally. Dr. Sanchez' subsidiary findings, somewhat more extensive than Dr. Arzola's but not entirely legible, include the following findings: "hypertension . . ., [n]o edema . . ., clear lungs . . ., no CHF, no angina. Left knee mild effusion osteoarthritis change . . . Narrowing of joint space . . . torn lateral left knee meniscus." Both Dr. Arzola's and Dr. Sanchez' findings support the ALJ's assumption in his hypothetical of an ability to do light work, since "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

By contrast, Dr. Rodriguez–Diaz, claimant's treating physician, filled out a residual functional capacity assessment form on October 18, 1988, and found claimant's exertional impairments to be more limiting. According to Dr. Rodriguez–Diaz, claimant can lift or carry 0–15 pounds less than 20% of the time, and can never lift or carry more than 15 pounds. Dr. Rodriguez–Diaz explained this conclusion by noting on the form: "As part explanation: can not stress joints mainly L–5 spine and legs." Dr. Rodriguez–Diaz also found that claimant should completely avoid repetitive movement of the hands and feet, climbing, balancing, bending, stooping, and squatting. In an attached letter dated August 15, 1986, Dr. Rodriguez–Diaz stated,

> Mrs. Berrios has a long standing history of arterial hypertension, severe obesity and arthritis.... She has Lumbar Spine degenerative changes, so as, tear of the mid-anterior aspect of the lateral meniscus Lt. Knee.
>
> Her blood pressure is constantly raising up and is not totally controlled. She also has a type IV hyperlipidemia.
>
> This patient cannot be standing for periods above one hour due to her condition. She is unable to work since time ago and due to above-mentioned conditions is disable (sic) to perform her regular duties.

Since Dr. Rodriguez–Diaz' assessment would deny that claimant has the ability to lift 20 pounds or to frequently lift or carry 10 pounds, his conclusions are inconsistent with an ability to perform light work as defined in 20 C.F.R. § 404.1567(b). Dr. Arzola's and Dr. Sanchez' reports, again, indicate that claimant could perform light work. By positing a hypothetical to the vocational expert that assumed an ability to do light work, the ALJ implicitly credited the latter two reports on this point.

These reports constituted the only evidence—with one partial exception, which we will discuss *infra*—on which the ALJ could permissibly rely to reach conclusions regarding claimant's exertional residual functional capacity because no other record evidence adequately discussed claimant's exertional impairments in functional terms. Since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess claimant's residual functional capacity based on the bare medical record. *Rosado v. Secretary of Health and Human Services*, 807 F.2d 292, 293 (1st Cir. 1986); *Berrios v. Secretary of Health and*

Human Services, 796 F.2d 574, 576 (1st Cir.1986); *Perez Lugo v. Secretary of Health and Human Services,* 794 F.2d 14, 15 (1st Cir.1986). The question before us, then, is whether the ALJ could properly reach the conclusion that claimant could perform light work based solely on reports of these two non-testifying, non-examining physicians.

This court held in *Browne v. Richardson,* 468 F.2d 1003 (1st Cir.1972), that, on the facts of that case, a written report submitted by a non-testifying, non-examining physician who merely reviewed the written medical evidence could not alone constitute substantial evidence to support the Secretary's conclusion. We pointed out that the report "lacks the assurance of reliability that comes on the one hand from first-hand observation and professional examination or, on the other, from first-hand testimony subject to claimant's cross-examination. It is hearsay based on hearsay. Thus, although the report may be admissible ..., it cannot be the substantial evidence needed to support a finding." *Id.* at 1006.

Our later decisions demonstrate, however, that the principle enunciated in *Browne* is by no means an absolute rule. *See Tremblay v. Secretary of Health and Human Services,* 676 F.2d 11, 13 (1st Cir. 1982) (affirming the Secretary's adoption of the findings of a non-testifying, non-examining physician, and permitting those findings by themselves to constitute substantial evidence, in the face of a treating physician's conclusory statement of disability). To the contrary, an advisory report such as those submitted by Dr. Arzola and Dr. Sanchez is entitled to evidentiary weight, which "will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 223 (1st Cir.1981). In a related context we have held that the testimony of a non-examining medical advisor—to be distinguished from the non-testimonial written reports in the instant case—can alone constitute substantial evidence, depending on the circumstances. *Rodriguez v. Secretary of Health and Human Services,* 893 F.2d 401 (1st Cir.1989);

*Torres v. Secretary of Health and Human Services,* 870 F.2d 742, 744 (1st Cir.1989); *Guzman Diaz v. Secretary of Health, Education and Welfare,* 613 F.2d 1194, 1199 n. 7 (1st Cir.1980).

Although we think it a close question, we find, on the specific facts of this case, that there is substantial evidence to support the Secretary's finding. Dr. Sanchez' report—if not Dr. Arzola's—contains more in the way of subsidiary medical findings to support his conclusions concerning residual functional capacity than is customarily found in the reports of consulting, non-examining physicians. Such reports often contain little more than brief conclusory statements or the mere checking of boxes denoting levels of residual functional capacity, and accordingly are entitled to relatively little weight. Here, by contrast, Dr. Sanchez at least briefly mentions all of claimant's alleged impairments and states medical conclusions as to each. Consequently, his report suggests that Dr. Sanchez did review the medical file with some care. Since Dr. Arzola's and Dr. Sanchez' reports were prepared in April and September 1989, respectively, there is every indication that these physicians had available to them most, although not all, of the medical evidence for their review. Moreover, these physicians tend somewhat to reinforce each other's conclusions by virtue of their broad agreement on the extent of claimant's exertional functional limitations.

Dr. Rodriguez–Diaz' report, too, does support its functional conclusions with medical findings, although it is somewhat conclusory. Dr. Rodriguez–Diaz, furthermore, was claimant's treating physician, and his residual functional capacity assessment was the product of his personal examination of claimant on October 18, 1988. In a nutshell, although Dr. Rodriguez–Diaz' report falls short of what would support a finding that claimant can do light work, it does not fall severely short. Thus, whereas light work requires "lifting no more than 20 pounds at a time," 20 C.F.R. § 404.1567(b), Dr. Rodriguez–Diaz finds claimant can lift fifteen pounds; whereas light work requires "frequent lifting or carrying of objects weighing up to 10 pounds," *id.,* Dr. Rodriguez–Diaz finds

claimant can lift and carry 0–15 pounds less than twenty percent of the time. In our view, the modest extent to which these findings fall short of a light-work capability gave the ALJ further leeway to credit the functional conclusions of the non-examining, non-testifying physicians as adequate by themselves to support a light-work capability. Dr. Rodriguez–Diaz' disagreement with the other two physicians' conclusions is not stark.

In addition, a fourth physician, Dr. Melendez, did also state functional conclusions when he noted, after performing a consulting examination, that claimant "is able to walk with difficulty for periods up to 45 minutes, [stand] up to 30 minutes, sit for unlimited time but is completely unable to kneel and/or squat." Dr. Melendez' functional analysis is incomplete in that it is silent as to claimant's lifting and carrying abilities, the primary area of dispute between Dr. Rodriguez–Diaz and the two non-examining physicians. Dr. Melendez did find, however, that claimant could sit for an unlimited time, and his findings that claimant could walk and stand to a limited extent appear consistent with the ALJ's hypothetical that claimant can do light work except "that she can't stand and walk all the time, but she has to exchange positions." Thus, although Dr. Melendez' functional findings do not support the conclusion that claimant can meet the specific lifting and carrying requirements of light work, they do support other aspects of the ALJ's functional conclusion.

Dr. Melendez, too, set forth medical findings of a relatively mild left knee condition, stating that claimant had "mild effusion into left knee" with no edema and good range of motion in all joints. The ALJ as a layman is not qualified to conclude that these bare medical findings support a light-work capability (although it might well be permissible to rely on these findings to support a sedentary-work capability, *see Gordils v. Secretary of Health and Human Services*, 921 F.2d 327, 329 (1st Cir. 1990)). Nevertheless, Dr. Melendez' failure to note a more severe left knee condition does render more reasonable the Secretary's reliance on Dr. Sanchez' and Dr. Arzola's reports.

It is true that the dispute here is at least partly over the extent to which claimant's pain in her left knee and from arthritis restricts her residual functional capacity. This is the kind of inquiry for which on-the-spot examination and observation of claimant might ordinarily be thought important. *See Rodriguez, supra,* 647 F.2d at 223 (the "nature of the illness" is relevant to the weight to be accorded a non-examining physician's conclusions). In this case, however, as we have already said, the record contains ample evidence to support the ALJ's conclusion that claimant's pain, viewed as a non-exertional impairment, only somewhat narrows claimant's ability to perform work at the appropriate exertional level. None of this evidence, to be sure, can be said to support the functional conclusion that claimant can meet the specific exertional requirements of light work. Still, the ALJ's well-supported doubt about the intensity of claimant's alleged pain is yet another factor making it reasonable for the Secretary to credit the exertional functional conclusions of non-examining physicians—including their implicit finding that claimant's pain does not preclude an exertional level of light work—over the contrary findings of claimant's treating physician.

The judgment of the district court is *affirmed.*