66 F.3d 306
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Felix ROSSI, Plaintiff, Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant, Appellee.
 No. 95-1045.
 United States Court of Appeals, First Circuit.
 Sept. 25, 1995.
 
 Barbara E. Oro on brief for appellant.
 Donald K. Stern, United States Attorney, Charlene A. Stawicki, Special Assistant United States Attorney, and Jessie M. Klyce, Assistant Regional Counsel, Department of Health and Human Services, on brief for appellee.
 Before TORRUELLA, Chief Judge, and SELYA and BOUDIN, Circuit Judges.
 Per Curiam.
 
 
 1
 Claimant Felix Rossi appeals the Secretary's decision that he is not disabled under either the Social Security Disability Insurance program ("SSDI"), 42 U.S.C. Secs. 401 et seq., or the Supplemental Security Income program ("SSI"), 42 U.S.C. Secs. 1381 et seq.[1] The district court granted judgment in favor of the Secretary. We affirm the district court's decision.
 
 Background
 
 2
 Claimant, formerly a laborer in the construction industry, filed for disability benefits on January 3, 1992, with a protected filing date of December 30, 1991. He alleged disability as of June 14, 1990, the date of a slip and fall accident which caused him to suffer a back injury. Claimant met the insured status requirements through March, 1992. The Administrative Law Judge ("ALJ") held a hearing and heard testimony from claimant and a vocational expert ("VE"). Claimant was represented by an attorney.
 
 
 3
 After the hearing, the ALJ found that claimant was not working; that he suffered a severe impairment; that his symptoms did not meet or equal any listed impairment; that he could not return to his past relevant work; and that he was not disabled since he could perform other work. See 20 C.F.R. Sec. 404.1520. The Appeals Council refused review. Claimant appealed to the district court, which affirmed the Secretary. This appeal followed.
 
 Discussion
 
 4
 We address each of claimant's arguments in turn and incorporate facts and medical evidence as needed. Our standard of review is limited. The Secretary's findings of fact are conclusive if they are supported by substantial evidence. " 'We must uphold the Secretary's findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.' " Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir.1991), quoting Rodriguez v. Secretary of Health and Human Services, 647 F.2d 218, 222 (1st Cir.1981).
 
 
 5
 1. Claimant argues first that the ALJ erred in concluding that he did not suffer from a listed impairment. See 20 C.F.R. Part 404, Subpart P., Appendix I. Specifically, claimant alleges that his condition meets or equals in severity Listing 1.05(C).[2]
 
 
 6
 We agree with the Secretary that the medical evidence of record does not indicate that claimant's condition satisfies the requirements set out in the Listing. We review the evidence of reflex loss. In his exam of July 30, 1990, Dr. Dorsey found the left knee and both ankle jerks diminished, but the right knee jerk active. In his September 4, 1990 exam, Dr. Baradaran found normal knee jerks and slightly diminished ankle jerks; he specifically found "no motor or sensory deficit in the right or left lower extremity." Other record evidence reflects diminished patella and absent ankle jerks in December, 1991, and diminished left patella reflexes in April and May, 1992. In July, 1992, Dr. Beal found "no radicular-type sensory deficits," and "no focal deficits in the reflexes, strength or sensation." This evidence indicates absent ankle reflex only in December, 1991, with periodic and occasional reflex loss or diminution in the ankle and left knee. Only in December, 1991, does the evidence indicate that there was any diminution in the right knee reflex.[3] In light of the criteria set out in Listing 1.05(C), we conclude that there was substantial evidence in support of the Secretary's decision that claimant did not satisfy the Listing requirements.
 
 
 7
 2. Claimant argues next that the ALJ erred in failing to consider his impairments in combination. Nurse Demerjian's Progress Notes, from the South Boston Community Health Center, reflect that on December 13, 1991, claimant was deemed to have high blood pressure. A later note (December 27, 1991) indicates that claimant's blood pressure was elevated, and suggests that he lose weight, decrease caffeine and stressors, and stop smoking. Claimant apparently began taking some type of medication for his pressure in May, 1992, and his blood pressure was controlled by medication by June 26, 1992. Claimant argues as well that he suffers from chronic obstructive pulmonary disease ("COPD") and that this, too, impairs him vocationally. However, there is no evidence of any vocational limitations as a result of the COPD. Claimant has the burden of proof on this issue, see generally 20 C.F.R. Sec. 404.1512, and has failed to carry it.
 
 
 8
 3. Claimant's third argument challenges the ALJ's conclusion that he is capable of performing the full range of light work.[4] We note first that although the ALJ did so conclude in his findings, he did not treat claimant as capable of performing the full range of light work. Instead, he accepted for the most part the limitations set out in the RFC prepared by Nurse Demerjian and he accepted as well claimant's professed need to change position regularly. These qualifications were part of the hypotheticals put to the VE, and discussed in detail infra.
 
 
 9
 Nonetheless, claimant insists that in reaching his "light work" conclusion, the ALJ mistakenly relied on two medical reports which gave no opinion as to claimant's ability to perform work-related activities, and that the ALJ misapplied the limitations set out in the report of Nurse Demerjian.
 
 
 10
 Nurse Demerjian submitted an RFC, dated June 1, 1993, in which she indicated that claimant could sit for three hours; stand for two hours; and walk for four hours as long as he could change position every two hours. She indicated that he could frequently lift up to 5 pounds, occasionally lift 5-10 pounds, and never lift any greater weight. While she thought that claimant could bend occasionally, she indicated that he could never squat, crawl, climb or reach above shoulder level, and that he could use only his right foot to operate foot controls. Nurse Demerjian revised her assessment one week later, indicating that because of shortness of breath and leg problems, claimant could walk for only 20-30 minutes at a time, up to a total of one hour per day.
 
 
 11
 The record contains other RFCs. The first, dated February 27, 1992, indicates that claimant could occasionally lift 20 pounds; frequently lift 10 pounds; stand and/or walk about 6 hours; sit up to 6 hours; and occasionally climb; balance; stoop; kneel; crouch and crawl. The second, dated July 23, 1992, reflects the same exertional limitations but differs in its assessment of claimant's postural limitations, limiting his stooping capacity to "occasionally," but finding that he could frequently climb; balance; kneel; crouch and crawl.
 
 
 12
 In determining a claimant's residual functional capacity, the ALJ is not limited to reliance on reports submitted by claimant's caregivers. The ALJ may also, under certain circumstances, rely on reports submitted by non-testifying, non-examining physicians. See generally Berrios Lopez v. Secretary of Health and Human Services, 951 F.2d 427, 429-32 (1st Cir.1991). This is especially true where, as here, these reports include medical findings to support the conclusions; the reports were prepared after most of the relevant medical data was generated; and the reports tend to reinforce one another. Berrios Lopez, 951 F.2d at 431.
 
 
 13
 Thus, we conclude that the ALJ could have relied on the RFCs of the non-treating physicians, and we find further that these would have supported a light work exertional capacity. We note again that in any event the ALJ did not hold claimant to this standard, but assessed his work capabilities in light of his particular non-exertional impairments.
 
 
 14
 4. Claimant's fourth argument is that the hypotheticals given to the VE did not accurately reflect the evidence in the record and so were improper under the standard set out in Arocho v. Secretary of Health and Human Services, 670 F.2d 374 (1st Cir.1982). We observed in Arocho that for a vocational expert's answer to a hypothetical to be relevant, "the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." Id. at 375. "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions." Id.
 
 
 15
 Claimant described his daily activities at the hearing. He indicated that he can walk twenty minutes before he needs to stop to catch his breath, and that if he sits for "an average of three hours, that's a lot." He does not make his bed, but he does dust, and he prepares frozen dinners or hamburgers for meals. He shops for groceries once a month and he has them delivered.
 
 
 16
 The ALJ questioned the vocational expert about "light jobs with an option to change position." After the VE identified various jobs, such as security guard/gate keeper, self service gas station attendant and cashier, the ALJ added claimant's restrictions regarding sitting, walking and standing, and the need to alternate position. He added as well the exertional requirements described by Nurse Demerjian, which were lower than the exertional requirements described in the other RFPs in the record. The VE indicated that the jobs he had identified did not involve any lifting, and did not require the operation of any machinery. These jobs assumed a sixth grade level of education, and the ability to read a newspaper. If claimant could not reach above the shoulder, that would eliminate the self service gas station attendant.
 
 
 17
 We perceive no problem with the data given by the ALJ to the VE. The record evidence supports the ALJ's conclusion that the claimant can perform light work. The fact that the strength limitations the ALJ gave to the VE approximated the sedentary strength requirements does not change this. First, as indicated above, the ALJ could reasonably have relied on the other RFCs of record which found claimant somewhat more able than did the RFC completed by Nurse Demerjian. See generally Berrios Lopez, 951 F.2d at 429-32. Next, we see no reason why a VE cannot testify that particular light jobs involve little or no lifting. Cf. Moncada v. Chater, 60 F.3d 521, 524 (9th Cir.1995)(fact that "some jobs listed by VE as sedentary are also listed as "light" work in the DOT is irrelevant; VE 'can testify whether particular applicants for disability benefits would be able to perform subcategories of jobs within the DOT' ") (citation omitted).
 
 
 18
 The ALJ apparently did not credit claimant's allegations of disabling pain as imposing any additional exertional limitations (see infra ) and so was not obligated to present these to the VE. The ALJ otherwise tailored his hypothetical to reflect claimant's particular needs.[5] We perceive no error.
 
 
 19
 5. Claimant's final challenge is to the ALJ's failure to credit his complaints of unremitting and constant pain as imposing a non-exertional impairment in addition to the exertional and positional impairments set out above.[6] It appears to us that the ALJ properly followed the approach endorsed in Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir.1986).
 
 
 20
 We have construed Avery to mean that "complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." Dupuis v. Secretary of Health and Human Services, 869 F.2d 622, 623 (1st Cir.1989). Assuming without more that claimant's back impairment could reasonably cause pain, the ALJ investigated claimant's activities and medications, and observed him at the hearing. The ALJ concluded, after considering all of this, that claimant's allegations did not impose additional restrictions other than limiting him to light work. Id. We have said repeatedly that we pay " 'particular attention' to an ALJ's evaluation of complaints of pain in light of their 'subjective nature.' " Ortiz v. Secretary of Health and Human Services, 890 F.2d 520, 523 (1st Cir.1989) (citations omitted). We find no error. There is substantial evidence in the record to support the Secretary's decision which is, accordingly, affirmed.
 
 
 
 [1]
 For simplicity, we refer only to the SSDI regulations since they are identical in all relevant particulars to the SSI regulations
 
 
 [2]
 Disorders of the spine:
 * * *
 C. Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
 
 
 [1]
 Pain, muscle spasm, and significant limitation of motion in the spine; and
 
 
 [2]
 Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss
 
 
 [3]
 We are puzzled by a reference in Dr. Grady's report to "electrodiagnostic studies" done September 4, in which "tibial H reflexes were absent in both legs." The only electromyographic report of record is dated September 4, 1985. R. 164. It discusses an "absen[t] ... H reflex on the right side, [and a] clinically absent ankle jerk." Claimant visited Dr. Baradaran on September 4, 1990, and he recommended an EMG; however, there are no results in the record. Assuming arguendo that there was an EMG study of September 4, 1990, indicating that "tibial H reflexes were absent in both legs," this would not change our conclusion that there is substantial evidence in favor of the Secretary's conclusion that the Listing 1.05(C) criteria were not satisfied
 
 
 [4]
 20 C.F.R. Sec. 404.1567(b) provides:
 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.
 
 
 [5]
 Insofar as claimant may be arguing that the ALJ in fact applied the grid to reach his conclusion against disability, we do not agree. The ALJ cited to the grid in his findings, but observed that the conclusion of "not disabled" which would have been directed by the relevant grid rule coincided with vocational expert testimony. As indicated above, we are satisfied that the ALJ adequately conveyed claimant's limitations to the VE
 
 
 [6]
 The ALJ's credibility finding, to the effect that "[t]he claimant is accepted as a credible witness to the extent set forth above (Social Security Ruling 88-13)" means what it says. Above, the ALJ had, in accordance with Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir.1986), reviewed claimant's activities, his description of his pain and his medication, and had concluded that claimant could perform light work. We reject the suggestion that this specific finding in favor of claimant's credibility means that the ALJ found credible claimant's assertions that his pain further limited him from performing work