**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 04-1341

CARMEN L. QUINTANA,

Plaintiff, Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Justo Arenas, U.S. Magistrate Judge]

Before

Selya, Lynch and Lipez,
Circuit Judges.

Salvador Medina de la Cruz on brief for appellant.
H.S. Garcia, United States Attorney, Lisa E. Bhatia, Assistant
U.S. Attorney, and Joseph E. Dunn, Assistant Regional Counsel,
Social Security Administration, on brief for appellee.

October 7, 2004

**Per Curiam**.   This appeal from the denial of social security disability benefits focuses on whether the claimant's residual functional capacity enables her to do work other than what she did in the past, and whether, despite the claimant's exertional (back pain) and nonexertional (asthma and anxiety) limitations, there remain a significant number of jobs in the national economy that she could perform.   The administrative law judge (ALJ) answered those questions in the affirmative, and the magistrate judge, sitting as the district court, see 28 U.S.C. § 636(c), affirmed.

On appeal, the claimant makes the following arguments:

(1) that the ALJ erred in relying, in part, on residual functional capacity reports prepared by consultants who had not examined the claimant, and

(2) that the ALJ erred in concluding that the claimant's residual functional capacity was not significantly undermined by her nonexertional impairments and therefore relying on the medical vocational guidelines (the Grid) to determine that jobs exist that the claimant can perform.

Given the deferential standard of judicial review applicable here, see, e.g., Richardson v. Perales, 402 U.S. 389, 399 (1971); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981), neither of those arguments warrants reversal.

<u>Reports by Nonexamining Consultants</u>

Although we have encouraged the Commissioner to obtain a residual functional capacity report from an examining consultant, <u>Rivera-Torres</u> v. <u>Sec'y of HHS</u>, 837 F.2d 4, 6 (1st Cir. 1988), reports from nonexamining, nontestifying consultants are "entitled to evidentiary weight, which 'will vary with the circumstances,'" <u>Berrios Lopez</u> v. <u>Sec'y of HHS</u>, 951 F.2d 427, 431 (1st Cir. 1991) (per curiam) (quoting <u>Rodriguez</u>, 647 F.2d at 223).[1]  Greater reliance on such reports is warranted where, as here, the nonexamining consultants, Hilario De La Iglesia, Ph.D., and Luis R. Vecchini, M.D., who prepared the mental residual functional capacity report, reviewed the reports of examining and treating doctors before doing so and supported their conclusions with reference to medical findings.  <u>See</u> <u>Berrios Lopez</u>, 951 F.2d at 431.

In this case, we need not consider whether the nonexamining psychiatric consultants' report, standing alone, constitutes substantial evidence to support the ALJ's decision concerning the claimant's mental residual functional capacity.  <u>Cf.</u> <u>Berrios</u> <u>Lopez</u>, 951 F.2d at 431 (finding such reports sufficient under similar circumstances).  In this instance, the record also contains comments on the claimant's residual functional capacity by

---

[1]Because the claimant here voluntarily waived her right to an evidentiary hearing and chose to rely solely on the documentary record, she cannot complain about her resulting inability to cross-examine the nonexamining consultants.

an examining consultant, Dr. Alberto Rodriguez Robles, and two treating psychiatrists, Dr. Ingrid Alicea-Berrios and Dr. Arias-Boneta. This is, therefore, not a case in which the nonexamining consultants' reports were the only evidence of the claimant's residual functional capacity. Cf. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). Nor is it a case in which the only evidence consists of "raw, technical medical data." Cf. Berrios v. Sec'y of HHS, 796 F.2d 574, 576 (1st Cir. 1986) (remanding because there was "nothing in the record, intelligible to a lay person" anent claimaint's residual functional capacity).

Although the claimant argues that the ALJ should not have relied on reports of nonexamining consultants, she does not argue that any particular finding of the ALJ is unsupported by other substantial evidence in the record. In fact, although the reports of the examining psychiatrists differ in some details from that of the nonexamining consultants, both sets of experts seem to agree with the ALJ's conclusion that, despite her mental impairments, the claimant retains the capacity to follow simple instructions involved in unskilled work. The examining psychiatrists' reports also lend some support to the ALJ's subsidiary findings that the claimant retains the capacity for social functioning and for concentration, at least for short periods. Indeed, one of the claimant's treating psychiatrists reported that, with medication,

-4-

the claimant's self-esteem, independence, and attitude toward life have improved.

In light of that substantial evidence supporting the ALJ's decision as to the claimant's mental residual functional capacity, it is inconsequential that, in some respects, the examining psychiatrists characterized the claimaint's mental impairments as imposing more limits than did the nonexamining consultants. See Berrios Lopez, 951 F.2d at 429. In particular, the ALJ's discrediting of claimant's claims that she was unable to do any activities of daily living was warranted, given the conflicting evidence in the record on this issue. Resolving such conflicts is for the ALJ, not for a reviewing court. Rodriguez, 647 F.2d at 222.

### Reliance on the Grid

Simply because a claimant suffers from both exertional and nonexertional impairments does not necessarily preclude using the Grid to determine whether jobs exist that the claimant could perform. Rather, where a nonexertional impairment has been "found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate." Ortiz v. Sec'y of HHS, 890 F.2d 520, 524 (1st Cir. 1989); see also 20 C.F.R. pt. 404, subpt. P, app. 2, § 2.00(e)(2). As long as the nonexertional impairment "has the effect only of reducing th[e] occupational base marginally, the

-5-

Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability." Ortiz, 890 F.2d at 524. While use of a vocational expert may be helpful in complex cases, such use is not required. See Social Security Ruling 96-9p, Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, 1996 WL 374185, at *9 (S.S.A. July 2, 1996).

Here, considering only the claimant's exertional limitation (back pain), which allowed her to do "medium" work, in combination with her age (45, which is considered a "younger individual," 20 C.F.R. § 404.1563(c)) and her education (high school graduate), the Grid would dictate a finding of no disability. See 20 C.F.R. pt. 404, subpt. P, app. 2, table 3. This is so regardless of the claimant's previous skilled-work experience. See id., rules 203.25-203.31. Therefore, that the claimant's mental impairments limit her to unskilled work makes no difference in the number of jobs available.

The claimant argues that her limitations in social functioning would make her unable to get along with supervisors and coworkers and would therefore so restrict her ability to do unskilled work as to require a vocational expert to determine whether sufficient jobs exist that she could perform. However, the ALJ expressly found that the claimant can "relate normally to co-workers and supervisors." That finding is supported by

-6-

substantial evidence in the record, including the claimant's own statements. Even claimant's treating psychiatrist rated the claimant's social functioning as only "moderately limited" in most respects.

Nor should the claimant's inability to be exposed to extreme temperatures, chemicals, dust, fumes, and gases--due to her asthma--reduce, more than marginally, the broad occupational base generally available to a younger individual with a high-school education who is able to do medium, light, or sedentary work. See See SSR 96-9p, supra, 1996 WL 374185, at *9 (explaining that "[e]ven a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base for sedentary work"). As noted by the ALJ, that base includes approximately 2,500 separate sedentary, light, and medium occupations, each of which represents numerous jobs in the national economy. See 20 C.F.R. pt. 404, subpt. P, app. 2, § 203.00).

We need go no further. For the reasons stated above, we conclude that the Commissioner's decision was supported by substantial evidence.

Affirmed.