Kevin C. BROWN, Plaintiff,

v.

**Kenneth S. APFEL, Commissioner of Social Security Defendant.**

No. C.A. 98–206–L.

United States District Court,
D. Rhode Island.

Oct. 27, 1999.

Morris Greenberg, Maria L. Nunez, Green, Greenberg & Nesselbush, Providence, RI, for Plaintiff.

Robin E. Feder, U.S. Attorney's Office, Providence, RI, for Defendant.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

Kevin C. Brown ("plaintiff") brought this suit under 42 U.S.C. § 405(g)(1994), seeking review of the final decision of the Commissioner of Health and Human Services ("Commissioner") denying disability insurance benefits. The Commissioner determined that, although plaintiff was under a disability, he was ineligible for insurance benefits because his alcoholism was material to a finding of disability. Magistrate Judge Robert W. Lovegreen reviewed the decision and issued a Report and Recommendation, concluding that the Commissioner's decision should be affirmed. This Court adopts the Magistrate Judge's recommendation but uses somewhat different reasoning as set forth below. The Court writes on this subject because it is important to explicate Congress' policy not to have the Social Security system subsidize alcoholism.

I. *Background*

Plaintiff was born on October 9, 1958 and completed fourteen years of education. In the relevant past, he was employed as a correctional officer. Plaintiff has been in and out of various detoxification programs since at least 1985. Plaintiff's alleged disability stems from an accident which occurred at work on September 20, 1992 while he was carrying a weight. Plaintiff testified that as a result of chronic pain following this incident, he became depressed. He admitted to using excessive amounts of alcohol which he testified was an attempt to alleviate his depression and pain. Since the time of the accident, plaintiff has not worked in any gainful employment and has received a variety of medical treatments for his back pain. Plaintiff has

not been treated for depression or any other mental condition.

## II. *Procedural History*

On April 29, 1994, plaintiff filed an application for disability insurance benefits, alleging an inability to work since September 20, 1992 due to low back pain, alcoholism and depression. The application was denied initially by the Social Security Administration. An Administrative Law Judge of the Department of Health and Human Services ("ALJ") considered the case *de novo*. On March 19, 1996, the ALJ held a hearing at which plaintiff, appearing with his counsel, and a medical expert testified. On April 10, 1996, the ALJ rendered his decision granting plaintiff's application for benefits. However, this decision was vacated by the ALJ *sua sponte* because he had failed to consider the revision to Section 223(d) of the Social Security Act contained in Public Law 104–121, effective March 29, 1996, which precludes recovery of disability insurance benefits "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub.L. No. 104–121 § 105(a)(1), 105(b)(1), 110 Stat. 847, 852–853 (codified as amended at 42 U.S.C. § 423(d)(2)(C)(1996)).

On October 15, 1996, a second hearing was held at which plaintiff, plaintiff's father and the same medical expert testified. A vocational expert was present at the hearing but did not testify. A supplemental hearing was held on December 5, 1996, at the direction of the ALJ, at which plaintiff again testified as did two experts, a psychiatrist and a psychologist. On January 17, 1997, the ALJ rendered his decision that, although plaintiff was under a disability, the revised Section 223(d) precluded plaintiff's recovery of disability insurance benefits, as his alcoholism was material to the finding of a disability. The ALJ's decision was reviewed and affirmed by the Department of Health and Human Services' Appeals Council on February 6, 1998 and thus became the final decision of the Commissioner.

Plaintiff sought timely review of the ALJ's decision before this Court by filing this suit on April 13, 1998. The complaint requests reversal or, in the alternative, a remand of the Commissioner's decision. The Commissioner, in turn, filed a motion to affirm his decision. This Court subsequently referred the case to Magistrate Judge Robert W. Lovegreen for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B)(1994). Magistrate Judge Lovegreen issued a Report recommending that the Commissioner's decision be affirmed. Plaintiff has objected to the Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1)(C)(1994).

## III. *Standard of Review*

■ The role of a district court in reviewing a decision of the Commissioner is limited because, although questions of law are reviewed *de novo*, "[t]he findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g)(1994). The term "substantial evidence" has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)(quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

■■ The determination of substantiality must be made upon an evaluation of the record as a whole. *See Ortiz v. Secretary of Health and Human Services*, 955 F.2d 765, 769 (1st Cir.1991)("We must uphold the Secretary's findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(quoting *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981)). However, this Court must avoid reinterpreting the evidence or otherwise substi-

tuting its own judgment for that of the Commissioner. *See Colon v. Secretary of Health and Human Services,* 877 F.2d 148, 153 (1st Cir.1989). Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts. *Rodriguez,* 647 F.2d at 222(citing *Richardson,* 402 U.S. at 399, 91 S.Ct. 1420).

A district court need not, however, perform the initial evaluation of the decision. Instead, it may refer the matter to a United States Magistrate Judge for a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B)(1994). In this case, per order of the Court, Magistrate Judge Lovegreen conducted an initial review of the Commissioner's decision using the above standards and found that the ALJ had applied the correct legal standards and that the denial of disability benefits was based on substantial evidence. Magistrate Judge Lovegreen thus recommended that the decision be affirmed.

As he is entitled to under 28 U.S.C. § 636(b)(1)(C)(1994), plaintiff objected to the Magistrate Judge's Report and Recommendation. When an objection is properly filed, as in this case, this Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C)(1994). However, this Court's *de novo* review is not limited to the specific objections made by plaintiff. "[W]hile the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas v. Arn,* 474 U.S. 140, 154, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). *See also Mathews v. Weber,* 423 U.S. 261, 271, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). Thus, this Court reviews the record *de novo* to determine whether the ALJ applied the correct legal standards and whether the ALJ's decision was supported by substantial evidence.

## IV. *Evidence*

The evidence in this case has been documented voluminously in the proceedings below. Plaintiff does not dispute the ALJ's finding, and the Magistrate Judge's subsequent recommendation to affirm, that plaintiff's back pain does not independently render him disabled. Instead, plaintiff challenges the ALJ's findings, and the Magistrate Judge's subsequent recommendation to affirm, regarding plaintiff's other impairments, namely his alleged personality disorder and depression ("mental impairments") and his alcoholism. Thus, this Court will outline only the evidence pertinent to the ALJ's findings on those issues.

### Alcoholism

Plaintiff has received treatment for alcohol abuse on and off over the past 14 years.

From April 20, 1985 until May 21, 1985, plaintiff was an inpatient at Edgehill Newport with an admitting diagnosis of alcoholism, low dose Valium abuse and history of low back injury. (Tr. 321). He provided a history of drinking for two years and was consuming one and one-half quarts of vodka and a pint of ginger brandy daily. He denied depression or suicidal ideation. During the course of treatment, he was weaned from alcohol, placed on back exercises and placed on Antabuse therapy. He was to start outpatient counseling at the end of May, 1985.

On May 24, 1986, plaintiff was again admitted to Edgehill Newport with a history of sobriety for nine months until three to four months earlier when he again began drinking and using Valium. (Tr. 331). He underwent detoxification and was discharged on May 27, 1986 to continue his aftercare program.

From July 25 to July 29, 1993, plaintiff was a patient at Good Hope Center having referred himself in a state of intoxication. (Tr. 351). He had consumed 18 beers, a pint of ginger brandy and one-half pint of vodka that day. He gave a history of prior treatment and detoxification at Edgehill in

1985, High Point in 1986, Edgehill in 1987, High Point in 1989, three to four days detoxification at Butler Hospital (date unknown) and counseling at CIS in Warwick, once weekly for three months. The reason provided by plaintiff for admission to Good Hope Center was "heavy and daily alcohol usage which created a strain within his relationship with his girlfriend." His discharge summary stated that he began drinking alcohol around age 17 or 18 and that currently (at age 34) he was ingesting at least 18 beers, one to two pints of ginger brandy and up to one quart of vodka daily and had been for the past four months. He was started on detoxification and education regarding relapse and poor coping skills. He commenced Antabuse therapy and was started on an aftercare program which included counseling, learning alternative coping skills, continued relapse education, monitoring the Antabuse, obtaining a sponsor and expanding his recreational interests.

From July 21 to July 25, 1994, plaintiff (then 35 years old) was admitted to Roger Williams Medical Center for alcohol abuse. (Tr. 256). He reported a 20 year history of steady alcohol abuse and that he was currently drinking one quart of distilled spirits daily. He underwent detoxification, but he refused to participate in a residential program. Plaintiff was released to enroll in outpatient substance abuse treatment. On August 5, 1994, plaintiff was terminated from the outpatient program for non-compliance. It was noted that he was missing sessions as a result of being intoxicated in Newport.

In addition to these medical records of plaintiff's alcoholism, plaintiff testified to a history of alcohol abuse. Plaintiff stated that he was drinking heavily at work even before the 1992 incident, drinking "[e]nough so I wouldn't get sick." (Tr. 62). At the March 29, 1996 hearing, plaintiff's attorney stated that "severe alcohol abuse" was plaintiff's "primary impairment." (Tr. 56). At that hearing, and at the October hearing, plaintiff admitted to a life controlled by alcohol. In March, plaintiff testified that "[i]f I didn't drink today, I wouldn't even be here." (Tr. 62–63). In October, plaintiff described his time spent in a typical day as divided between "sitting in the bed or sitting on a bar stool." (Tr. 85).

## Mental Impairments

Plaintiff's mental condition was evaluated by four different doctors, none of whom treated plaintiff for a mental impairment.

Plaintiff was seen by Dr. John Ruggiano, a psychiatrist, on September 9, 1994. (Tr. 276). At that time, plaintiff gave a history of his back injury and stated that he had become withdrawn and depressed. He was also having difficulty sleeping, could not work and had back pain. He had increased his use of alcohol and his daily intake varied. He was in a depressed mood with a cynical, angry disposition and a pessimistic, hopeless future orientation. He admitted to drinking and wished to make his alcohol abuse part of his treatment. Dr. Ruggiano diagnosed plaintiff with Adjustment Disorder with Depression. Dr. Ruggiano recommended psychotherapeutic counseling and antidepressants after detoxification. Future vocational rehabilitation and retraining was suggested as Dr. Ruggiano concluded that plaintiff was not capable of returning to the position of correctional officer. Dr. Ruggiano felt the disorder was causally related to the September 20, 1992 injury and treatment might extend between 6 and 12 months. Dr. Ruggiano saw plaintiff again on September 24, 1994 and stated that he believed plaintiff was "subjectively improved." (Tr. 280).

Plaintiff was scheduled for another visit to Dr. Ruggiano on October 8, 1994; however, plaintiff missed the appointment. Dr. Ruggiano testified at the December hearing that plaintiff had indicated that he had missed the appointment because he did not believe he needed psychiatric attention. (Tr. 122–123). Plaintiff testified that his failure to return to Dr. Ruggiano

was due to lack of money or insurance coverage. (Tr. 123).

Plaintiff did not see Dr. Ruggiano again until September 30, 1996, for the purpose of "updating" plaintiff's condition in anticipation of the October 15, 1996 hearing. (Tr. 443). At that time, Dr. Ruggiano indicated that plaintiff presented the "same clinical picture"—back pain with consequent depression and withdrawal. Dr. Ruggiano completed a Substance Abuse Materiality Questionnaire and concluded that plaintiff's alcoholism was not material to his level of function. Dr. Ruggiano stated that plaintiff's primary disabling factors were back pain and depression, but he did not opine as to how much each factor contributed to plaintiff's condition. He stated that alcohol was a secondary factor.

Dr. Ruggiano testified at the December hearing that his diagnosis of plaintiff was essentially "alcoholism, depression and [a] borderline" personality. (Tr. 115). In addition, Dr. Ruggiano testified that if plaintiff did not use alcohol and was forced to be in a working environment, he would "always be complaining about back pain," he would "always be expecting more than his employer would be willing to give him" and he would be "repeatedly deteriorating." (Tr. 122).

On February 8, 1995, Dr. Ernesto Soriano, a psychiatrist, reviewed plaintiff's file. (Tr. 167). In completing a Mental Residual Functional Capacity Assessment ("MRFCA"), Dr. Soriano found that plaintiff was no more than "moderately limited" in any of the vocationally relevant functional areas assessed. Specifically, Dr. Soriano noted that plaintiff's drinking had resulted in interference with plaintiff's overall work performance and interpersonal relationships, with only secondary effects stemming from his "depressed mood."

On April 24, 1995, Dr. Stephen Clifford reviewed plaintiff's file. (Tr. 209). In completing a MRFCA, Dr. Clifford concluded that plaintiff was "moderately limited" in his ability to interact appropriately with the general public and in his ability to accept instructions and respond appropriately to criticism from supervisors, but was otherwise not significantly limited. Specifically, Dr. Clifford found that plaintiff's alcohol abuse would contribute to poor work attendance, concentration and short-term memory. Interpersonally, Dr. Clifford found that plaintiff would resist supervisory criticism and be slow to comply to it. In addition, he would be irritable with the public and thus not helpful in a service capacity.

On October 14, 1996, one day before the hearing, plaintiff met with Dr. David Stern, Psy.D., for about one hour. Dr. Stern testified at the December hearing that he had reviewed only the reports of Dr. Ruggiano and Dr. Charles Earley, plaintiff's treating physician with regard to his back injury, in conjunction with his examination of the plaintiff. (Tr. 129). Dr. Stern indicated that he agreed with Dr. Ruggiano's assessment. Dr. Stern testified that plaintiff's "anti-social features" began when he was very young and have been "aggravated and sort of made more entrenched and deepened by years of alcohol dependancy." (Tr. 130). Dr. Stern predicted that if plaintiff were sober, he would be a "nervous wreck.... [T]he most difficult thing he'll have to deal with is the astonishing vulnerability and his reactivity, his explosiveness and his fearfulness." (Tr. 139–140). Dr. Stern concluded that if plaintiff were sober, "I don't think he'd be able to hold a job for quite a while." (Tr. 140).

The only other evidence in the record regarding plaintiff's mental condition consists of subjective observations of plaintiff's mental condition, which do not amount to medical diagnoses. In 1985, when plaintiff was at Edgehill Newport, the admitting physician noted, "Psychologically, I see no areas of difficulty, other than those of the chemical dependency." (Tr. 324). His discharge summary noted

that he had problems with anger, lack of assertiveness and poor self worth. (Tr. 327–328). In 1993, Dr. Earley noted that plaintiff had a "marked despondency" and "definitely needs psychological support and training." (Tr. 399). Later in 1993, plaintiff's case manager at Good Hope Center noted that:

> "[Plaintiff] reports problems with depression. He feels that this is a reaction to his failed marriage and his out of control drinking. . . . He does describe that his moods are somewhat volatile when he is drinking, although they are stable when he is not. He also reports that drinking also leads him to impulsive behavior. . . . He denies any current fears or phobias. . . . In summary, alcohol has decreased the quality of [plaintiff's] life emotionally/cognitively in a moderate manner as evidenced by depression, increased mood swings, and impulsive behavior." (Tr. 359).

## V. *Legal Standards*

Under the Social Security Act ("the Act"), a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A)(1994). The impairments must be of such severity that the person is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A)(1994). When assessing the severity of impairments, the Commissioner must consider the "combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B)(1994).

In determining whether a claimant is disabled under the Act, the Commissioner employs a five step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920 (1999); *Bowen v. Yuckert*, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6–7 (1st Cir.1982). First, the adjudicator determines whether the claimant is performing substantial gainful employment. If he is, he is not disabled and the analysis is at an end. If he is not, step two requires a determination of whether a severe impairment or combination of impairments exists. If it does not, claimant is not disabled. If it does, step three requires a determination of whether claimant's impairment meets or equals one or more listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. If a listed impairment is found, claimant is disabled. If not, step four requires a determination of whether claimant can perform his past relevant work. If he can, claimant is not disabled, and if he cannot, step five requires a determination of whether he can perform any other work in the national economy considering his age, education and past work experience. If he can perform other work, he is not disabled and if he cannot, he is disabled.

 While the claimant has the burden of showing an inability to perform his previous work, the Commissioner has the burden, if the analysis reaches the fifth step, to show that there are other jobs in the national economy that he can perform. *Vazquez v. Secretary of Health and Human Services*, 683 F.2d 1, 2 (1st Cir.1982). When a claimant has only exertional, or strength, limitations, the Commissioner can carry this burden by utilizing the Medical Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 ("the Grid"); however, when a claimant has nonexertional limitations that significantly affect the claimant's ability to perform the full range of jobs he is otherwise exertionally capable of performing, "the Secretary must carry his burden of proving the availability of jobs in the national economy by other means," typically through the use of a vocational

expert. *Ortiz v. Secretary of Health and Human Services*, 890 F.2d 520, 524 (1st Cir.1989)(quoting *Gagnon v. Secretary of Health and Human Services*, 666 F.2d 662, 665 n. 6 (1st Cir.1981)).

■ In the past, the conclusion of the five step analysis ended the inquiry, and claimant was labeled either "disabled," eligible for benefits, or "not disabled," ineligible for benefits. However, in 1996, Congress amended the Act to preclude a finding of disability "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub.L. No. 104–121 § 105(a)(1), 105(b)(1), 110 Stat. 847, 852–853 (codified as amended at 42 U.S.C. § 423(d)(2)(C)(1996)). The accompanying regulations make clear that a finding of disability is a condition precedent to the application of the amendment. 20 C.F.R. §§ 404.1535(a), 416.935(a)(1999)("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."). Thus, under the Act as amended, if a finding of disability is made after the five step analysis, the Commissioner must go one step further and make this materiality determination. The "key factor" to be considered, in fact the only factor mentioned in the regulations, is whether the claimant would still be disabled absent the drug addiction or alcoholism. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1) (1999).

This amendment became effective March 29, 1996, thus prompting the ALJ to vacate his original decision of April 10, 1996, which found plaintiff to be "dis-abled," so that this further determination regarding materiality of plaintiff's alcoholism could be made in light of the amendment.[1]

## VI. *The ALJ's Decision*

In applying the five step analysis detailed above, the ALJ found that: 1) plaintiff had not engaged in substantial gainful activity since September 20, 1992, 2) plaintiff had severe alcoholism, a personality disorder, and lumbar disc disease with radiculopathy, but that 3) he did not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R. pt. 404, subpt. P, app. 1.

Next, the ALJ determined that plaintiff "has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for an inability to lift or carry over 50 pounds occasionally, or to be exposed to extreme wet or cold. [Plaintiff] is additionally limited [in][sic] his ability to accept close supervision or work with the public due to his personality disorder, and has difficulty with attendance, performing tasks safely, concentration, task persistence, and memory in performing work-related activities due to alcoholism and intoxication." Thus, addressing the fourth step, the ALJ concluded that plaintiff was "unable to perform his past relevant work as corrections officer."

To address the fifth step, the ALJ concluded that, based on plaintiff's capacity for medium work,[2] his age, education and work experience, the Grid indicated that there were other jobs in the national economy that plaintiff would be capable of performing and thus "would direct a conclusion of 'not disabled.'" However, the ALJ

---

1. This Court agrees with Magistrate Judge Lovegreen that, to the extent plaintiff had any due process argument regarding the application of the amendment to his case, he has waived it. *See Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir.1998)(argument not raised in an objection to a magistrate judge's report and recommendation is waived).

2. The ALJ's finding that plaintiff had "an inability to lift or carry over 50 pounds occasionally" corresponds to a finding that plaintiff is capable of "medium" work. 20 C.F.R. § 404.1567(c)(1999).

then considered plaintiff's alcoholism and concluded that plaintiff's "capacity for all work, including a significant range of medium work, has been significantly compromised by his alcohol abuse, such that his alcohol abuse is a contributing factor material to a finding of disability." As a result of this analysis, the ALJ concluded that because plaintiff would not be disabled if he stopped using alcohol, the Act as amended precluded the award of disability benefits.

Essentially, the ALJ found that plaintiff was disabled within the meaning of the Act if all of his impairments, including his alcoholism, were considered, but if the five step analysis was applied without regard to plaintiff's alcoholism, a finding of "not disabled" would be appropriate, because, even though plaintiff could not return to his previous job as a correctional officer, the Grid established that there were other jobs available in the national economy that plaintiff was capable of performing. Said another way, the ALJ determined that the combination of plaintiff's exertional requirements and mental impairments would not be independently disabling. Thus, alcoholism was a factor material to a finding of disability, rendering plaintiff "not disabled" under the Act as amended.[3]

### VII. *Discussion*

■ Plaintiff does not challenge the ALJ's findings with respect to his exertional limitations. Instead, plaintiff claims that the ALJ's conclusion that alcoholism was a contributing factor material to a finding of disability was not adequately supported in two ways: 1) that there was

no substantial evidence to separate plaintiff's alcoholism from his mental impairments and 2) that the ALJ's finding that plaintiff's mental impairments, when combined with plaintiff's exertional limitations, would not be independently disabling is not supported by substantial evidence. This Court, after reviewing the record *de novo*, finds neither argument persuasive and thus affirms the ALJ's findings.

For his first argument, plaintiff relies on a Social Security Administration emergency teletype to all disability adjudicators dated August 30, 1996, discussing the application of revised Section 223(d). The teletype states that if mental impairments cannot be separated from alcohol or drug addiction, a finding of "not material" is appropriate when making the materiality determination. Plaintiff argues that there was a lack of substantial evidence to separate plaintiff's alcoholism and mental impairments and thus a finding of "material" was improper.

Whether such a teletype is even binding on the Social Security Administration is questionable, *see, e.g., Kiedos v. Apfel,* 45 F.Supp.2d 80, 85 (D.Mass.1999)("There is certainly a question as to whether...the [emergency teletype] has sufficient legal force to bind [the Social Security Administration]"); however, this Court need not decide that issue because, even if it is, the evidence supports the ALJ's distinctions. Plaintiff does not point to even a shred of evidence that suggests that plaintiff's alcoholism and mental impairments are so inextricably intertwined that an assessment of plaintiff's functional capacity absent alcoholism is not possible. To the contrary,

---

**3.** This characterization of the ALJ's findings is slightly different from the characterization adopted by Magistrate Judge Lovegreen in his Report and Recommendation. Judge Lovegreen seems to have concluded that, at the fifth step of the analysis, the ALJ found that plaintiff was "not disabled." Thus, Judge Lovegreen did not think the issue of materiality of plaintiff's alcoholism was applicable, although he did address it for the sake of completeness. While this Court acknowledges that the ALJ's findings are not crystal clear on

this point, this Court is satisfied that the ALJ in fact found plaintiff "disabled" when his alcoholism was considered. This is evidenced, if not in the ALJ's specific findings, by the body of the ALJ's opinion, in which he states "the undersigned concludes that the claimant would be incapable of performing any jobs existing in significant numbers in the national economy due to his alcoholism." (Tr. 35). Thus, a determination of the materiality of plaintiff's alcoholism was proper under the Act as amended.

even the examining physicians plaintiff relies upon to support his argument that he is disabled absent alcoholism separate the effects of plaintiff's alcoholism from the effects of his other impairments. Drs. Stern and Ruggiano specifically testified to all of the effects plaintiff's mental impairments would have on his working potential were he to be sober; neither ever claimed that plaintiff would have to be sober to determine those effects.

Furthermore, Dr. Clifford addressed the specific functional areas affected by plaintiff's alcoholism and mental impairments respectively. He found that plaintiff's alcoholism would contribute to poor work attendance, concentration, short-term memory and a decreased ability to learn complex tasks, while he found that, interpersonally, plaintiff would resist supervisory criticism and would be irritable with the public.

The ALJ evaluated these assessments, and conducted a detailed analysis of the effects of plaintiff's alcoholism and mental impairments respectively, finding that: "[Plaintiff is additionally limited [in][sic] his ability to accept close supervision or work with the public due to his personality disorder and has difficulty with attendance, performing tasks safely, concentration, task persistence, and memory in performing work-related activities due to alcoholism and intoxication.]" Thus, plaintiff's first argument is without merit.

Plaintiff next contends, that, even if the impairments can be separated, there was no substantial evidence as a matter of law to conclude that the mental impairments in combination with plaintiff's exertional limitations would not be independently disabling. Specifically, plaintiff claims that the ALJ should have heard vocational expert testimony before concluding that, absent alcoholism, there were still jobs in the national economy that plaintiff was capable of performing, even though his exertional limitations would prevent him from returning to his prior work as a correctional officer.

Although the remainder of his Report and Recommendation is detailed and thorough, on this issue Magistrate Judge Lovegreen summarily concluded that vocational testimony was not necessary. While this Court agrees with this conclusion, a more detailed analysis is necessary.

Plaintiff asserts that simply because the ALJ found plaintiff to have nonexertional impairments besides alcoholism, "exclusive reliance on the Grid was erroneous." (Pl's. Br. at 13). This is not so. It is well settled that a vocational expert is only necessary when nonexertional limitations "significantly [affect] claimant's ability to perform the full range of jobs" found using the appropriate Grid criteria. *Ortiz*, 890 F.2d at 524 (quoting *Lugo v. Secretary of Health and Human Services*, 794 F.2d 14, 17 (1st Cir.1986)). Indeed, even if a nonexertional limitation is considered "significant," exclusive reliance on the Grid will still be appropriate if the nonexertional impairment "has the effect only of reducing that occupational base marginally." *Id. See also Heggarty v. Sullivan*, 947 F.2d 990, 996 (1st Cir.1991). The *Ortiz* court, in finding that exclusive reliance on the Grid was appropriate even though plaintiff had a significant mental impairment, explained "the more [the] occupational base is reduced by a nonexertional impairment, the less applicable are the factual predicates underlying the Grid rules, and the greater is the need for vocational evidence." *Ortiz*, 890 F.2d at 524–525.

Thus, because the ALJ utilized the Grid to determine that plaintiff would not be disabled absent alcoholism, he must have determined, although not explicitly stating as much, that plaintiff's mental impairments would not significantly affect plaintiff's ability to work or otherwise reduce plaintiff's available occupational base more than marginally. The real question before this Court, then, is whether there is substantial evidence for the ALJ to so conclude. If there was, vocational expert testimony was unnecessary and plaintiff is not

disabled, because clearly, a finding that plaintiff's mental impairments would not significantly affect or reduce plaintiff's occupational base results in a finding that these impairments would not be independently disabling. If there was a lack of substantial evidence for the ALJ's finding, plaintiff is entitled to a remand and vocational expert testimony must be heard on this issue.

This Court finds that the evidence is sufficient for the ALJ to have determined that plaintiff's mental impairments would not significantly affect or reduce plaintiff's occupational base. The only medical evidence regarding the severity of plaintiff's mental impairments are the reports and testimony of Drs. Ruggiano and Stern and the reports of Drs. Clifford and Soriano. To put the evidence at its simplest level, Drs. Ruggiano and Stern characterize plaintiff's mental impairments as his "primary" disabling factor, such that they would render plaintiff unable to work even absent his alcoholism. Conversely, Drs. Clifford and Soriano characterize plaintiff's mental impairments as only "secondary" to his alcoholism. In making his decision that plaintiff's mental impairments would not significantly affect or reduce plaintiff's occupational base, the ALJ resolved the conflict in the evidence by giving more weight to Dr. Clifford's, and presumably, Dr. Soriano's opinion, and less weight to the opinions of Drs. Stern and Ruggiano. This raises two questions: 1) whether the weight allocated by the ALJ between this evidence was adequately supported by the record and 2) whether the evidence so weighted is substantial, such that it could reasonably lead the ALJ to conclude that plaintiff's mental impairments would not significantly affect or reduce plaintiff's occupational base. This Court answers both of these questions in the affirmative.

First, the record adequately supports the ALJ's allocation of evidentiary weight. There is a good deal of evidence that plaintiff himself considers alcoholism his primary disabling factor. In 1993, almost a year after the accident that allegedly caused his mental impairments, plaintiff told his case manager at the Good Hope Center that his coping skills were fine when he wasn't drinking. In 1995, plaintiff did not return to Dr. Ruggiano for psychiatric treatment because, by the doctor's account, he did not feel he needed such treatment. Finally, at the March, 1996 hearing, plaintiff's attorney stated that alcohol was plaintiff's primary disabling factor—other mental impairments were barely mentioned at that hearing.

In addition, both Drs. Stern and Ruggiano seem to suggest that plaintiff's drinking is a result of his pain and mental impairments, but plaintiff's long history of alcohol abuse and attempted treatment suggests that the cause and effect relationship is actually the other way around. Finally, as the ALJ and Magistrate Judge noted, Dr. Stern's analysis, which suggests that plaintiff began developing his mental impairments early in his childhood, is particularly unsupported by the record, as there is no evidence suggesting such a history.

Second, the opinions of Drs. Clifford and Soriano could reasonably lead the ALJ to conclude that plaintiff's occupational base would not be significantly affected or reduced by plaintiff's mental impairments.

It is helpful to note that the occupational base available to plaintiff based on his exertional limitations is relatively large. "The functional capacity to perform medium work includes the functional capacity to perform sedentary, light, and medium work. Approximately 2,500 separate sedentary, light, and medium occupations can be identified, each occupation representing numerous jobs in the national economy which do not require skills or previous experience and which can be performed after a short demonstration or within 30 days." 20 C.F.R. pt. 404, subpt. P, app. 2 § 203.00 (1999). Thus, this functional capacity represents a "substantial work capability." *Id.*

In completing the MRFCA, both Drs. Clifford and Soriano found the plaintiff to be "not significantly limited" in 1) the ability to carry out very short and simple instructions, 2) the ability to sustain an ordinary routine without special supervision, 3) the ability to work in coordination with or proximity to others without being distracted by them, 4) the ability to make simple work-related decisions, 5) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and 6) the ability to ask simple questions or request assistance. Dr. Soriano found plaintiff "moderately limited" in the ability to get along with coworkers and peers and the ability to maintain socially appropriate behavior, while Dr. Clifford found plaintiff "not significantly limited" in those areas. Similarly, Dr. Clifford found plaintiff "moderately limited" in the ability to interact appropriately with the general public and the ability to accept instructions and respond appropriately to criticism from supervisors, while Dr. Soriano found plaintiff "not significantly limited" in those areas. Both doctors agreed that plaintiff was "moderately limited" only in the ability to carry out detailed instructions and maintain attention and concentration for extended periods. In the written comments, Dr. Clifford stated that plaintiff would not be helpful in a service capacity but did not find him otherwise limited. Dr. Soriano stated that plaintiff's mental impairments would only limit him "from time to time."

Given the large occupational base available to plaintiff and the findings that plaintiff would not be significantly limited in almost every functional area relevant to performing jobs available in this base, particularly unskilled work, see Soc. Sec. Ruling 85–15, 1985 S.S.R. 91 (Cum. Ed.1985)("The basic mental demands of. . . unskilled work include the abilities. . . to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."), this Court finds that the assessments of Drs. Clifford and Soriano constitute substantial evidence for the ALJ's conclusion that plaintiff's occupational base would not be significantly affected or reduced by his mental impairments. *See Ortiz*, 890 F.2d at 527 (finding substantial evidence for ALJ's conclusion that "claimant's capacity for the full range of light work was not *significantly* compromised by his additional nonexertional limitations" where MRFCAs indicated that claimant was "not significantly limited" in functional areas relevant to unskilled work, even though he was "moderately limited" in other areas)(emphasis theirs).

Finally, the fact that Drs. Soriano and Clifford were neither examining nor testifying physicians is not fatal to the conclusion that their reports constitute substantial evidence for the ALJ's finding. While it is true that in some cases written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, *see Browne v. Richardson*, 468 F.2d 1003, 1006 (1st Cir.1972), this is not an ironclad rule. *See Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir.1994); *Berrios Lopez v. Secretary of Health and Human Services*, 951 F.2d 427, 431 (1st Cir.1991). Whether such evidence may be considered substantial "will vary with the circumstances, including the nature of the illness and the information provided the expert." *Id.* (quoting *Rodriguez*, 647 F.2d at 223).

In *Berrios Lopez*, 951 F.2d at 431, the First Circuit found the reports of two non-examining, non-testifying physicians to constitute substantial evidence of the ALJ's finding regarding claimant's residual functional capacity because: 1) the reports contained written comments and medical conclusions rather than just "the mere checking of boxes denoting levels of residual functional capacity," 2) the reports were consistent with each other and 3) the

physicians had available to them most, although not all, of the medical evidence for their review.

This Court finds that the same situation exists here; thus these reports constitute substantial evidence of the ALJ's conclusion in this case. Both doctors' opinions contain written analyses of plaintiff's mental condition with specific findings as to the effects of plaintiff's mental impairments and alcoholism, as opposed to "a mere checking of boxes." In addition, the doctors' medical findings regarding plaintiff's alcoholism and mental impairments are strikingly similar to each other. Finally, although as plaintiff points out, Drs. Soriano and Clifford conducted their evaluations in 1995, before the 1996 reports of Drs. Ruggiano and Stern, Drs. Soriano and Clifford had most, if not all, of the relevant medical evidence pertaining to plaintiff available for their review. This is because Dr. Ruggiano acknowledged that plaintiff's clinical condition had not changed between his 1994 and 1996 visits. The only change was Dr. Ruggiano's further assessment that, given plaintiff's clinical condition, plaintiff's alcoholism was not material to his level of functioning. Dr. Ruggiano did not appear to base this conclusion on any new medical evidence that was not available to Drs. Soriano and Clifford.

Thus, the ALJ's conclusion that plaintiff's mental impairments would not significantly affect or reduce his occupational base is supported by substantial evidence and reliance on the Grid to determine that plaintiff would be "not disabled" absent his alcoholism was appropriate. Since plaintiff would not be disabled absent his alcoholism, the ALJ's finding that alcoholism was a contributing factor material to the finding of disability was entirely appropriate.

For the preceding reasons, plaintiff's motion for reversal or a remand is denied and defendant's motion to affirm the Commissioner's decision is granted. Judgment shall be entered for the defendant, forthwith.

It is so ordered.